UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREENPOINT TECHNOLIGIES, INC.

    Plaintiff,

v.

PERIDOT ASSOCIATED S.A., *et al.*,

    Defendants.

CASE NO. C08-1828 RSM

ORDER GRANTING IN PART
DEFENDANTS' MOTION

## **I. INTRODUCTION**

This matter comes before the Court on Defendants' motion to dismiss, or in the alternative, to stay the proceedings pending arbitration, and to vacate a prejudgment writ of garnishment. (Dkt. #13). Defendants argue that the case should be dismissed, or at the very least, stayed pursuant to a binding arbitration clause contained in a contract entered into by the parties. Defendants also contend that a writ of garnishment ordered by a King County Superior Court Commissioner prior to this lawsuit's removal to this Court should be vacated. Alternatively, Defendants argue that the amount of the bond should be increased. Defendants also seek fees and costs pursuant to Washington's long-arm statute.

Plaintiff concedes that this lawsuit is subject to arbitration, but argues that the Court should enter a stay rather than an order of dismissal. Plaintiff also argues that the writ was

ORDER
PAGE - 1

properly granted at the state court level. Lastly, Plaintiff contends that fees and costs are unwarranted under Washington's long-arm statute because the statute does not impose fees and costs if a case is stayed.

For the reasons set forth below, the Court GRANTS IN PART Defendants' motion.

## II. DISCUSSION

**A. Background**

Plaintiff Greenpoint Technologies, Inc. ("Greenpoint") is a Washington corporation that provides custom VIP interior modifications to aircraft. On February 28, 2008, Greenpoint entered into a contract with Defendants Peridot Associated S.A., Peridot Associated Limited, and Peridot Ltd. (collectively "Peridot").[1] The contract called for Greenpoint to install custom VIP interiors in two airplanes controlled by Peridot in return for over $64 million. Peridot was also required to make an initial payment of over $15 million. However, Greenpoint alleges that Peridot did not make any payments despite repeated assurances that it would pay. Consequently, Greenpoint claims that it incurred substantial expenses and made several operational commitments as a result of Peridot's misrepresentations. Greenpoint subsequently brought the instant lawsuit in King County Superior Court on December 5, 2008, seeking $17 million in damages.

Significantly, the contract contained an arbitration clause that provided:

> Any dispute arising out of or in connection with this Agreement which is not amicably settled by the Parties shall be finally settled under the Rules of the American Arbitration Association ["AAA"] in effect at the date hereof by three arbitrators appointed in accordance with said rules.

(Dkt. #13, Ex. A at 29, ¶ 18.3).

Greenpoint's complaint acknowledges the existence of this arbitration clause. Greenpoint nevertheless indicates that it filed suit in order to obtain interim relief. Thus, Greenpoint simultaneously filed an *ex parte* motion for a prejudgment writ of garnishment

---

[1] Defendants contend that Peridot Ltd. does not exist. (Dkt. #33 at 2, n. 1). It is immaterial for purposes of the instant motion to determine whether Defendants were properly named. Accordingly, the Court refers to all Defendants collectively as Peridot at this stage of the proceedings.

ORDER
PAGE - 2

with its complaint. Greenpoint indicated in its motion that after Peridot received formal notice of Greenpoint's intention to sue, Peridot transferred title of one of the aircraft that was the subject of the parties' contract to Defendant Wells Fargo as a garnishee to hold in trust for Peridot. Therefore Greenpoint argued in state court that a writ of garnishment pursuant to RCW 6.27.100(1) was necessary to preclude Wells Fargo or Peridot from selling or otherwise transferring ownership of the aircraft while arbitration was pending. Without the writ, Greenpoint argued that its ability to collect the amounts owed to it would have been significantly compromised.

On December 10, 2008, six days after Greenpoint filed its lawsuit, a state court commissioner granted Greenpoint's motion. The state court commissioner additionally conditioned the writ on a $50,000 bond that was paid by Greenpoint. One day later, Greenpoint served Peridot with these papers. Peridot subsequently removed the case to this Court pursuant to 28 U.S.C. § 1441 and § 1446 on December 23, 2008.

The parties corresponded soon thereafter in an effort to refer the entire matter to arbitration pursuant to the clause referenced above. However, no agreement could be reached because the parties disputed the validity of the prejudgment writ of garnishment issued by the state court commissioner. Peridot requested that Greenpoint vacate the writ prior to moving the case to arbitration on the grounds that the writ itself was an arbitral matter. Greenpoint denied the request, claiming that there was no basis to disturb the writ. As a result of the parties' disagreement, the instant motion followed.

**B. Writ of Garnishment**

The parties do not dispute that the matter is referable to arbitration. Rather, the central issue raised by the parties' respective briefings is whether the Court should vacate or otherwise modify the writ prior to referring this case to arbitration. Accordingly, the Court finds it unnecessary to discuss or analyze the general rules governing arbitrability in great detail, and instead focuses its inquiry into whether it has the authority to vacate the writ.

Importantly, a "federal court takes the case as it finds it on removal and treats everything that occurred in state court as if it had taken place in federal court." *Butner v.*

ORDER
PAGE - 3

*Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). But "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto*, 415 U.S. 423, 437 (1974); *see also Ex parte Fisk*, 113 U.S. 713, 726 (1885) (holding that a party who properly removes a case to federal court "has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed"). Moreover, and under 28 U.S.C. § 1450, courts implicitly have the "authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal." *Granny Goose Foods*, 415 U.S. at 437.

Pursuant to this inherent power of the court to modify or dissolve a previous order, the Court finds it clear that the writ issued by the state court commissioner should be vacated. The state court commissioner engaged in an incorrect analysis of the applicable law in granting the writ at-issue. The state court commissioner ignored the relevant legal authority favoring arbitration, as well as the binding arbitration clause contained in the parties' contract.

As an initial matter, there can be no doubt that "Congress enacted the [Federal Arbitration Act] to overcome judicial resistance to arbitration . . . and to declare a national policy favoring arbitration of claims that parties contract to settle in that matter." *Vaden v. Discover Bank*, --- S.Ct., ---, 2009 WL 578636, *6 (March 9, 2009) (internal quotations and citations omitted). The primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, (1989). The FAA clearly manifests a liberal federal policy favoring arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

Furthermore, once a court determines that all disputes are subject to arbitration pursuant to a binding arbitration clause, it is improper for a district court to grant preliminary relief where *provisional relief is available from an arbitral tribunal*. *See Simula, Inc. v. Autolive, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (emphasis added). District courts within the Ninth Circuit have consistently followed this holding. *See*, *e.g.*, *DHL Info. Servs., Inc. v. Infinite*

*Software Corp.*, 502 F.Supp.2d 1082, 1083 (C.D. Cal. 2007) (applying *Simula* to refrain from carving out interim relief issues from the arbitrator); *Ever-Gotesco Res. and Holding, Inc. v. PriceSmart, Inc.*, 192 F.Supp.2d 1040, 1044 (S.D. Cal. 2002) (holding that *Simula* requires an arbitral tribunal to grant provisional relief where the parties submit to arbitration); *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 155 F.Supp.2d 1174, 1182 (C.D. Cal. 2001) (reversing magistrate judge's issuance of a writ and finding that "*Simula* dictates that the court must respect [an arbitration] agreement and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief").

In the instant case, there can be no dispute that the arbitration clause governs "[a]ny dispute arising out of or in connection with this Agreement," and that such disputes will be "settled under the Rules of the [AAA]." (Dkt. #13, Ex. A at 29, ¶ 18.3). There is equally no dispute that the Rules of the AAA provide that the arbitral tribunal "may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conversion of property." Article 21 of the AAA's International Arbitration Rules. Thus, this case fits squarely within the principles established by *Simula*. No interim relief should be awarded by a court because the parties have clearly agreed to settle their disputes in arbitration, and the arbitration rules provide an avenue for interim relief.

Nevertheless, Greenpoint remarkably contends that *Simula* is "entirely inapt under these circumstances." (Dkt. #28 at 12). Greenpoint argues that *Simula* "stands for nothing more than the appellate court's refusal to find an abuse of discretion in the trial court's equitable determination to deny a preliminary injunction." (*Id.*). This contention grossly understates *Simula's* persuasive effect, as it ignores the plain language of the case. It is undeniable that the *Simula* court expressly found that "it would have been inappropriate for the district court to grant preliminary injunctive relief" where the arbitral tribunal is authorized to grant the injunctive relief. *Simula*, 175 F.3d at 726. Greenpoint's arguments are also significantly undermined by the district courts mentioned above which have consistently followed this holding. Simply because Greenpoint changed the procedural posture of this case by first obtaining a writ in state court does not take this case away from *Simula's* umbrella.

ORDER
PAGE - 5

Greenpoint additionally warns the Court that adopting Peridot's arguments would be contrary to the overwhelming weight of authority and effectively create new law. In support of this argument, Greenpoint cites several cases that grant a district court the power to award interim relief pending arbitration. (Dkt. #28 at 8-12) (collecting cases). However, the Court is well aware of a district court's ability to award such interim relief in aid of arbitration. *See PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988) ("The fact that a dispute is arbitrable and that the court so orders . . . does not strip it of authority to grant a writ of possession pending the outcome of arbitration so long as the criteria for such a writ are met."). Peridot itself acknowledges that a trial court may "provide for provisional remedies in the context of arbitration proceedings where appropriate." (Dkt. #33 at 4). But these cases are not dispositive of the narrow issue presented here. As discussed above, the inquiry presented by this case is whether the Court may now overrule the state court commissioner and vacate a previous order when the parties' agreement clearly allows an arbitral tribunal the authority to grant interim relief. Based upon *Simula* and its corresponding case law, it is clear that the writ was improperly granted.

Greenpoint also contends that the arbitral tribunal will have no jurisdiction to enforce the writ because Wells Fargo is not a party to the arbitration. Yet, Greenpoint cannot dispute that Peridot must abide by any order of the tribunal; an order that may include Peridot's ability to control Wells Fargo. In any event, the Vice President of Wells Fargo states that:

> I can affirm and attest that Wells Fargo as Owner Trustee agrees not to deliver, sell, or transfer, or recognize any sale or transfer of, the [aircraft at-issue] until such time as the arbitration proceedings are completed, or until authorized by a competent tribunal. I can further attest that Wells Fargo as Owner Trustee agrees to abide by any interim relief ordered by the arbitral panel presiding over the arbitration between Greenpoint and Peridot.

(Dkt. #34, Decl. of Rosevear, ¶ 7).

To the extent that Greenpoint claims that this declaration is not binding, and that Peridot may change its instructions to Wells Fargo, the Court is confident that any forum adjudicating the instant dispute would view such conduct unfavorably. As a result, the Court shall give

effect to the parties' intention to be bound by the arbitration clause, as well as the AAA rules which provide interim relief. The prejudgment writ shall be vacated.

### C. Stay Pending Arbitration

Peridot argues that the instant case should be dismissed. However, "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration[.]" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3 and 4). Indeed, this district court routinely stays cases that are referable to arbitration. *See Jeld-Wen Inc. v. Merrill Lynch Intern. Inc.*, 2009 WL 159227, *5 (W.D. Wash. Jan 22, 2009); *Olson v. Alterra Healthcare Corp.*, 2008 WL 4379056, *2 (W.D. Wash. Sep. 23, 2008); *Huang v. Washington Mut. Bank*, 2008 WL 4103918, *7 (W.D. Wash. Aug. 25, 2008).

Furthermore, the case Peridot cites to in support of dismissal is inapposite. In *China National*, the court was compelled to dismiss the claim because the only relief sought by plaintiff was the injunctive relief the court referred to arbitration. 155 F.Supp.2d at 1182. Here, Greenpoint's complaint avers more than the prejudgment writ of garnishment it obtained at the state court level, as Greenpoint also makes claims for breach of contract, negligence, and fraud and misrepresentation. Under such circumstances, the Court shall adhere to the general principles that favor a stay when a matter is referable to arbitration.

Relatedly, Peridot seeks attorney's fees and costs for bringing the instant motion to compel pursuant to Washington's long-arm statute. This statute provides:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

RCW 4.28.185(5).

Here, the instant case has only been stayed. Peridot is not the prevailing party, and therefore attorney's fees and costs are unwarranted.

### III. CONCLUSION

ORDER
PAGE - 7

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' motion to dismiss, or in the alternative, to stay the proceedings pending arbitration, and to vacate a prejudgment writ of garnishment (Dkt. #13) is GRANTED IN PART. This case is shall be STAYED pending arbitration. The prejudgment writ of garnishment shall be vacated. Nothing in the language of this Order precludes Greenpoint from pursuing interim relief in arbitration.

(2) The parties are directed to submit a Joint Status Report <u>no later than six months from the date of this Order</u> informing the Court of the status of this case.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this  11  day of March, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE